**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

LARRY C. LAY, et al., )
                                                  )
      **Plaintiffs,**                          )
                                                  )
v.                                                      )      No.  3:06-CV-111
                                                  )      (Phillips)
BURLEY STABILIZATION CORPORATION, et al.,  )
                                                 )
      **Defendants.**                    )

**MEMORANDUM AND ORDER**

        Plaintiffs are members of the Burley Stabilization Corporation, which is an agricultural cooperative established to aid burley tobacco growers.  With this lawsuit, plaintiffs have sued the cooperative and its directors and officers to obtain surplus funds that were allegedly received when the plaintiffs' tobacco corps were sold by the cooperative in various years.  Specifically, plaintiffs allege that the cooperative, its directors and officers have misused and/or wasted corporate assets.  Defendants have moved to dismiss this action for lack of subject matter jurisdiction asserting that because plaintiffs' claims are derivative in nature, plaintiffs claims must be dismissed for failure to make a pre-litigation demand upon the cooperative's board or directors.  For the reasons which follow, the defendants' motions will be granted, and this action will be dismissed.

**Background**

In 2004, Congress passed legislation to discontinue the federal government's long-standing tobacco price-support program and to provide for the orderly liquidation and distribution of all remaining price-support program funds that were held by the Commodity Credit Corporation (CCC), which is the federal agency that administered and regulated the price-support program. At present, CCC is actively working with its tobacco cooperative association partners, like the Burley Stabilization Corporation (BSC) to implement this new federal law.

The BSC is a non-profit agricultural cooperative association organized under Tennessee law in 1953 to support growers of burley tobacco within its geographic area, which includes portions of Tennessee, North Carolina and Virginia. Among its other functions, BSC works through and with CCC to help administer the federal tobacco price-support program. The individual defendants are officers or directors of BSC.

According to their Fifth Amended Complaint, plaintiffs are tobacco producers and members of BSC who enjoyed federal price-support on burley tobacco sold under the federal price-support program for one or more of the 1982 through 2004 crop years. Plaintiffs' Fifth Amended Complaint asserts class claims whereby the named plaintiffs propose to represent the interests of approximately 140,000 additional members and co-owners of BSC.

In their Fifth Amended Complaint, plaintiffs seek to recover funds currently held by CCC for BSC in the so-called No Net Cost Account, together with any "Net Gains" realized on the sale of the 1983-2004 crops of price-support tobacco. Plaintiffs also seek recovery of any proceeds from the sale of price-support tobacco that CCC has released to BSC pursuant to the Reform Act. Finally, plaintiffs seek to recover any proceeds that may have been realized on BSC's redemption and resale of the 1982 tobacco crop, which was authorized by CCC in the 1980s and completed not later than 1991.

**Procedural History**

Plaintiffs filed their original complaint against the BSC defendants on February 14, 2005 in the Circuit Court for Knox County, Tennessee. Plaintiffs amended their complaint as of right on April 8, 2005, after which the BSC defendants moved to dismiss based on, among other grounds, plaintiffs' failure to comply with the requirements for asserting a derivative action. In response, plaintiffs sought and obtained leave to again amend their complaint to "clarify allegations in the Amended Complaint which were criticized by the defendants in their motion to dismiss."

In the following months, plaintiffs filed additional amended complaints, each of which the BSC defendants moved to dismiss, and each of which resulted in still further amendments to plaintiffs' complaint, which is currently in its sixth iteration. The state court held, pursuant to controlling case law, that plaintiffs' claims are derivative in nature and that the claims had not been brought by the requisite number of plaintiffs or verified, as required by Tenn. Code Ann. § 48-56-401. In lieu of dismissal, plaintiffs requested, and the state

court granted, leave to further amend their complaint. Thus, the state court did not reach the remaining derivative issues (including plaintiffs' failure to make a pre-litigation demand). Following additional amendments, the state court next ruled that CCC was a necessary party and ordered plaintiffs to amend their complaint accordingly. Plaintiffs' filed their Fifth Amended Complaint naming CCC as a party-defendant. On March 29, 2006, CCC timely removed the case to this court pursuant to 28 U.S.C. § 1446(d).

## Analysis

Defendant BSC and the individual defendants have moved to dismiss the claims against them on the grounds that plaintiffs' claims are derivative in nature, and this court lacks subject matter jurisdiction over said claims as a result of plaintiffs' repeated failure to exhaust their corporate remedies and to otherwise comply with the requirements for asserting derivative claims as set out in Tenn. Code Ann. § 48-56-401.

Defendant CCC has moved to dismiss plaintiffs' claims against it pursuant to Rule 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

A "district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477,

479 (6th Cir. 1999).  Federal courts are always "under an independent obligation to examine their own jurisdiction," *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990), and a federal court may not entertain an action over which it has no jurisdiction.  *See Insurance Corp. Of Ireland, Ltd v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701 (1982). If a court lacks jurisdiction, it "cannot proceed at all in any cause; jurisdiction is power to declare law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94 (1998).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.  *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.) *cert. denied,* 498 U.S. 867 (1990).  The court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations.  *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses).  The court must liberally construe the complaint in favor of the party opposing the motion.  *Id.*  However, the complaint must articulate more than a bare assertion of legal conclusions.  *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir. 1988).  "[The] complaint must contain

either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

### **Claims Against Burley Stabilization Corporation and the Individual Defendants**

The BSC defendants allege that the plaintiffs have failed to exhaust available corporate remedies as required to bring a derivative action against them. The Tennessee Supreme Court has held that "before a minority stockholder or shareholder may maintain a suit to enforce his rights as such against the corporation and the majority in charge and in control of the corporation, he is required to show that his remedies permitted within the corporate structure have been exhausted, or that such an attempt to exhaust said remedies would be a useless gesture." *Davis v. Appalachian Elec. Coop., Inc.,* 373 S.W.2d 450, 451 (Tenn. 1964). Further, "If the shareholder has not exhausted his remedies within the corporation and has not shown that any attempt along such lines would be blocked by an oppressive majority, or be an idle gesture for some other reason, then he has not brought himself under the general exception of useless attempt and must be denied relief." *Id.*

While the demand requirement for derivative claims arose in case law, it was codified by the Tennessee General Assembly in Tenn. Code Ann. § 48-56-401(c). The statute mandates that plaintiff "allege with particularity the demand made, if any, to obtain action by the directors and either why the plaintiff could not obtain the action or why they did not make the demand." *Id.* at § 48-56-401(c); *see also* F.R.C.P. 23.01 ("The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action

the plaintiff desires from the directors or comparable authority and, if necessary from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."). These requirements serve to protect the remaining members of the corporation from the expense of unwarranted and costly litigation. In accordance with controlling Tennessee law, the state court correctly held as follows:

> [T[his lawsuit sounds, when considering the entirety of the pleadings, more as a derivative lawsuit than a class action lawsuit. And, the best example is the last discussion I had with counsel for the plaintiffs, because the plaintiffs are asking here for remedies against individual board members, for remedies related to functions, management and operations and control of and management of corporate assets, and so to this court the court thinks the totality sounds as a derivative lawsuit.

*See* Ex. 2, Doc. 25, Circuit Court Transcript of Proceedings dated July 29, 2005, at 46-47.

Having heard and decided this issue, the state court's determination that plaintiffs' claims are derivative is the law of the case, which this court will not reconsider absent extraordinary circumstances. *Bowling v. Pfizer, Inc.,* 132 F.3d 1147, 1150 (6th Cir. 1998) ("Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court in the same case."); *Pacific Employers Ins. Co. v. Sav-a-Lot of Winchester,* 291 F.3d 392, 398 (6th Cir. 2002) (noting that law of the case doctrine also applies to rulings by state courts prior to removal). Plaintiffs have not identified any "extraordinary circumstances" to justify revisiting the state court's holding that their claims are derivative. Therefore, having failed to either make an appropriate demand on the BSC's directors or plead with particularity why such demand should be excused, plaintiffs' Fifth Amended Complaint will be dismissed without prejudice

as to BSC and the individual defendants. *See Pilgrim Emmanuel Baptist Church v. Buckingham,* 2001 WL 1090509 (Tenn.App. Sept. 19, 2001) (affirming dismissal of derivative action that failed to allege either pre-suit demand or its futility).

### **Claims Against Commodity Credit Corporation**

Plaintiffs assert causes of action against all "Named Defendants" for conversion, negligent misrepresentation, breach of contract, and breach of constructive trust. In addition, plaintiffs assert a cause of action for breach of fiduciary duties against the individual defendants. Plaintiffs' complaint fails to distinguish between CCC, BSC, and the individual defendants for most allegations stated in the Fifth Amendment Complaint. The only relief sought specifically against CCC is stated as follows by plaintiffs:

> To the extent the CCC continues to possess, maintain and control a No Net Cost tobacco account on behalf of BSC pursuant to 7 U.S.C. § 1445-2, or retains any Net Gains from the sale of the 1982-2004 pool crops, or has any other interest in the funds or tobacco collateral at issue in this action, named plaintiffs call upon the CCC to come forward and assert whatever interest, if any, it may have in those funds or tobacco collateral.

CCC seeks dismissal of plaintiffs' claims against it for failure to state a claim upon which relief may be granted. The court agrees that this action should be dismissed against CCC. First, plaintiff's claim for conversion sounds in tort, *see State ex rel. Flowers v. Tennessee Coordinated Care Network,* 2005 WL 427990 *7 (Tenn.App. Feb. 23, 2005), and plaintiffs have failed to exhaust their remedies under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2675. The FTCA, requires that an administrative claim be presented

to and finally denied by the appropriate federal agency before commencing suit in district court. 28 U.S.C. § 2675(a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

This requirement of exhaustion of administrative remedies is a jurisdictional prerequisite to the filing of an action under the FTCA. *See McNeil v. United States,* 508 U.S. 106, 113 (1993); *Joelson v. United States,* 86 F.3d 1413, 1422 (6th Cir. 1996). Plaintiffs have not pleaded that they exhausted the FTCA's jurisdictional, administrative requirements. Accordingly, their conversion claim against the CCC will be dismissed. *See Johnson v. Smithsonian Ins.,* 189 F.3d 180, 189 (2nd Cir. 1999) (noting that the burden is on the plaintiff to plead and prove compliance with the FTCA).

Next, plaintiffs' claim for negligent misrepresentation cannot be asserted against the CCC because such a claim is an exception to the waiver of sovereign immunity granted in the FTCA. 28 U.S.C. § 2680(h). As for plaintiffs' claim for constructive trust, the FTCA does not waive sovereign immunity for equitable claims such as a claim for constructive trust. *See Pesnell v. United States,* 64 Fed.Appx. 73, 74 (9th Cir. Apr. 29, 2003).

Last, plaintiffs have alleged no contract with CCC on which plaintiffs could base any claim for breach of contract. The only remaining cause of action against CCC is Count VIII of plaintiffs' complaint. In Count VIII, plaintiffs request that CCC "come forward and assert whatever interest, if any, it may have in [No Net Cost account] funds or tobacco collateral." Such is not a valid claim against CCC under any theory of law. Accordingly, all claims against CCC will be dismissed for lack of subject matter jurisdiction.

## Conclusion

For the reasons set forth above, the motions to dismiss filed by defendants [Docs. 7, 10] will be **GRANTED.** The claims against defendant Commodity Credit Corporation are hereby **DISMISSED WITH PREJUDICE;** and the claims against defendant Burley Stabilization corporation and the individual defendants are hereby **DISMISSED WITHOUT PREJUDICE**.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge